The next matter is number 23-1241, Edward Kennewan Tulung et al. v. Merrick v. Garland. At this time, would counsel for the petitioner please introduce himself on the record? Good morning, Your Honor. William Hahn. I'm here on behalf of the Tulung family. Your Honors, I would like to start with two exhibits. Did you want to retain any time for rebuttal? I'm sorry, Judge? Did you want to retain any time for rebuttal? I'll retain two minutes. Okay. I appreciate it. May it please the Court, I'd like to begin with two exhibits to our July 2022 motion to reopen. That would be at the appendix, page 40, our exhibit list. Exhibit B is the 15 BIA decisions on motions to reopen. Exhibit E is the updated statement of Edwin Tulung, the lead petitioner. The Tulung statement is required by statute 8 U.S.C. 1229 small a C7 capital B. And the problem is near the end of the BIA decision that we're appealing, the BIA says that it is not addressing the statement because it discusses information before July 2022. And it cites this Court's decision in Perez-Tino v. Barr. But if I can just read one sentence from that case where this Court held, quote, prima facie scrutiny of a motion to reopen means an evaluation of the evidence that accompanies the motion, as well as relevant evidence that may exist in the record of the prior hearing in light of an applicable statutory requirements for relief. So basically, in our view, Your Honor, it's unheard of for the BIA to say we're not going to consider a statutorily required updated statement by the petitioner. And I would submit that that really is an error as a matter of law. I think this is the same error the BIA made in applying Molina v. Barr, another case of this Court, which we discussed in our brief, which holds that on a motion to reopen, you ought to consider everything from the time of the original merits hearing, which in this case was 2009, up until the filing of the motion to reopen, which was July 2022. So what do we go back to? What do you do when the chronology is this? You have a hearing, and the hearing concludes with a denial of the relief. A year later, there's then a motion to reopen based on changed country conditions, and that's unsuccessful. A year after that, there's a second motion to reopen based on changed country conditions, and that's accompanied only by evidence that wasn't but could have been put in the first motion to reopen. How is the BIA to assess that? Judge, to be on the safe side, when I looked at what had happened, when the family came to me and I looked at what had happened, the motion that you're talking about, the prior motion. I'm not saying that's this case. I'm just trying to understand how the framework, your position on how the framework works here. When you have one motion to reopen, and then you have a second one, and the second one relies only on evidence that was either submitted or could have been submitted at the first one. Judge, to cover all bases on the second one that you're talking about, I also filed a motion to reconsider and a motion to amend on that one. I understand. The motion to reconsider was denied, but the motion to amend was never acted on by the BIA. They did not grant the motion to amend or deny the motion to amend. Had they granted it, that's great. Had they denied it, they would have had to give a reason, and I would put that in my brief, but they did not deny it. They did not give a reason. So there's actually several things before you. There's the second motion you're talking about. There was one back in 2014. You're talking about the second one, and that's where we filed the new motion to reopen, motion to reconsider, and motion to amend, the one that you just brought up. So we were trying to cover all bases because, Your Honors, I think that the Supreme Court, in the cases we've cited, says that a motion to reopen is an important safeguard in this process, and it's my view that this family who's here today, they deserve one full and fair opportunity. That's all we're asking for is one full and fair opportunity, and in that 2020 motion, Your Honor, I looked at it, it's four pages. It's titled motion to reopen. It's four pages. Most of it is boilerplate, and so I looked at it, there's really nothing there. That's why I filed the motion to amend the motion to reconsider and filed the new motion to reopen. I'm just trying to give this family the one opportunity, and I point out, Your Honors, that in the 15 decisions we've given you, and there's one more appended to our reply brief that's from 2023, there were no restrictions by the BIA. The BIA looked at everything from the date of the merits hearing, and a lot of those were many years ago, to the date of the filing of the motion to reopen. They looked at everything. And so what we're saying is that's all we're asking for is for the BIA to look at everything. Okay. I'm not saying that the hypothetical I gave you is this case. I'm not saying what the answer is. I'm not saying that you're only relying on things, and I'm not saying that you don't have other arguments, but if you want to cover each of the bases, you've got to address each base separately and explain how you're covering it. So let me go back to my question. What are we to do if we have hearing, motion to reopen one denied, motion to reopen two that relies only on evidence that was submitted in reopen one or was available then? What do we do? I'm not saying this is your case, but I want to start with what we do with that. Well, Judge, I guess I'd point out. Suppose the BIA just said there's nothing new here and everything you're relying on was available at the prior motion, so denied. Judge, I would respectfully submit it was not available, or what was not available. Now you're jumping ahead to the second question, but I take it you keep jumping away because you agree that if the scenario were as I painted, you would have a problem. Well, in the Second Circuit case we cite, Tenu Santoso, there had been, in the history of that case, there had been three motions to reopen, and the Second Circuit, on the third motion to reopen, remanded the BIA seeing that they had not addressed certain evidence in that case. So honestly, Judge, in many of these cases there are more than one motion to reopen. And I really want to answer your question, and what I'll say is that on the second motion to reopen from 2020, not mine, the second one, since those 15 BIA decisions from 2018 to 2021, since they were unpublished, they were not known to the prior counsel who filed that. And so I submitted those, and I believe that they are really extremely important, because if you look at... So let's stay with, I think what you said is you're still not answering my question, but you are saying this case isn't my question, so we'll go with that for a second. With respect to your third motion to reopen, what information does that rely on that was not available at the time of the second motion? The, Judge, as I said, the 15 unpublished decisions were before the second motion. Actually, not all of them. Most of them were before the second motion. Okay, so some of them weren't even available at the... They were unknown, they're unavailable. And the other ones you're saying that had been decided because they were unpublished, we should deem them not as a practical matter available. Right. Is there anything else other than those decisions? Right, I mean, obviously I knew about them, but I was not representing the family. So I didn't come in until after the fact. Then I looked at it, Your Honor, and obviously I had those 15 decisions. I mean, that's a lot of decisions over a long period of time where there had been a finding of changed country conditions. And so, again, it was my feeling, Judge, that the family should have a full and fair opportunity to present everything to the BIA and have the case decided. Yes, and my question is, other than the 15 decisions, was there anything else, any other evidence relevant to the changed country conditions that was available at the time of the third motion that had not been available at the time of the second motion? Judge, I understand what you're saying and... Was it the continuation, something that existed at the time of the third motion but did not exist by definition at the time of the second motion? I guess, Judge, what I'm saying is if you file a motion to reopen, you go back to the original merits hearing in the Immigration Court, okay? I understand that's not exactly what you're asking, but I think in any motion to reopen, under this Court, several precedents, including the ones that I've talked about, and also Sanchez-Romero, you go back to the original merits hearing and then you go forward to the motion to reopen. And as I said, I asked for a reconsideration of that second motion to reopen. I also filed a motion to amend to add everything from our third motion to reopen that has not been ruled on. The BIA, it was unopposed by the Department of Homeland Security and it has never been ruled on by the Board of Immigration Appeals. So, as I said, I was trying to give this family every possible opportunity to have one full and fair consideration based on all the evidence. And I really do want to answer all of your questions, Judge, and if there's something further, I'd appreciate it. Well, I think I would repeat what you just said to you. Is there anything further that you would point us to by way of information that was available at the time of the third motion that was not reasonably available at the time of the second motion other than perhaps the 15 decisions? Did anything happen in Indonesia or to your clients between the second and third motion that you think is relevant to the decision on their application? We've asked the court to take judicial notice of the 2023 BIA decision that's appended to our reply brief. And that, I believe, that has some additional information in it. There's also a related case that is number 23-1712 that's pending. We just filed our brief, and that has the additional information, and that's why we asked the court to take judicial notice of something that's in that case, and that's what we appended to our reply brief. What you want us to take judicial notice of, does that reflect intensification or deterioration since the time that you filed the prior motion to reopen? What does it reflect? What it reflects, Judge, is that in 2023 the BIA made a further decision of changed country conditions based on deterioration. When? Well, it would have been from prior to our filing of that motion, which would have been one to two years before that time. Before the third motion? I'm sorry? Before the third motion? Before the third motion, Judge. And the second motion, I think, was filed in 2020. So are you saying that between the second and third motion there was a deterioration of conditions in the country? There was, Judge, because there was actually a 2021 incident, a bombing incident, which is talked about in that 2023 decision, as well as we also have that in our exhibit list. It actually exhibits N and O in our exhibit list in appendix page 40. Those have two incidents which post-dated the second motion. Thank you. Thank you. Thank you, counsel. At this time, I have counsel for the respondent. Please introduce yourself on the record to begin. Good morning, Your Honors, and may it please the Court. Cori Farrell on behalf of the Attorney General. This case concerns the Board's broad discretion to deny a motion to reopen. Despite being subject to a final order of removal and the denial of a petition for review by this Court over 10 years ago, petitioners have remained in the United States, repeatedly filing motions to reopen alleging similar country conditions. If they allege changed country conditions, would there be anything to prevent? Is there any bar to filing as many motions to reopen as they want to? There is a bar to filing motions to reopen, but as you are, I think, referring to, Your Honor, if there is a showing of changed country conditions, then that time and number limit would be excused for their motion. So here, in the interest of finality and considering the high burden for reopening, the Court should conclude that the Board did not abuse its discretion in denying the motion to reopen here, which was the third such motion based on changed country conditions. The word change implies a delta, a difference between A and B. Correct. I believe this Court has stated that grave conditions that remain grave are not sufficient. But we've also stated certainly there's a difference between something that's episodic and something that's continuous. The latter could be more serious than the former. Correct. Here, Your Honor, this Court upheld the agency's initial decision that these petitioners did not establish eligibility for relief. And since that decision, we've had three motions to reopen. The last one is the only one before the Court at this time. And in that motion, petitioners were relying on conditions that have existed and evidence that has existed throughout these ten years in between. We were just told that several of the exhibits, including one of the Board decisions, refer to events that occurred after the second reopened decision. Correct, Your Honor. So there is new evidence. Its significance is a separate issue, but there is new evidence. There is new evidence by way of date. That's correct, Your Honor. But what the Board also said was that this evidence was not only previous, lots of it was previously available, it was also cumulative. Go back to my question on the Delta. I had thought that the relevant Delta was that when the Board has a motion to reopen, it's based on changed country conditions. It's to compare the country conditions as they exist at the time of the underlying hearing as compared to how they exist at the time of the motion to reopen. That's correct, Your Honor. There must be a showing of conditions of a change in that time period. But the Delta between A and B, A is the time of the original hearing, and the Board, as I read it, did not do that here. It assessed the Delta between the intervening motion to reopen and the third motion. Correct, Your Honor, and Respondent concedes in the brief that that relevant time period is intentioned with the case law holding, that the relevant time period is the immigration judge hearing and the motion to reopen. So then my question becomes, if everybody's agreed that the Board did not look at the relevant time period, why wouldn't we at that point simply say, well, go back and look at the right time period? Why would we say, even though you didn't look at the relevant time period, we're going to pretend that we're the Board and say what you would have done had you looked at the right time period? Because the Board also said that, went on to discuss the evidence as being cumulative and that the Board has been looking at the same claim over and over and the same evidence over and over. So the Board here has repeatedly looked at each step on all these motions and determined whether there have been changed country conditions, and here they said that the evidence was also previously available and cumulative. But we know some of the evidence wasn't previously available. Correct, but it was cumulative. Well, and then cumulative, what do we mean by cumulative? Do we mean, in other words, if I say the car hit me and then I come back a year later and say the car hit me, that's cumulative. And if I bring in a third witness who says the car hits me, that's cumulative. But suppose I come in and say a second car hit me. Is that cumulative? Well, no, Your Honor. And here they're saying that not only did these events we described previously occur, but they've continued to occur, and if you look at the Board decision, the Board in another case found the cumulative impact of all of them to warrant reopening. Well, if we're talking about the one unpublished decision, which was not previously available, first I'd like to know what the Board said that these decisions are not binding, they're not precedential authority. But that would be true of a newspaper report or an expert report. Correct. They're not binding on the Board, but they're still quite relevant. They are relevant, except that this Court has recognized that both changed country conditions and eligibility for relief are highly fact-specific. So because there's one case or 15 here, if we're just looking at them all, does not mean that these petitioners met their high burden for reopening, based on the evidence submitted. In lots of these cases, there were named parties to the Davitri case that resulted from Operation Indonesian Surrender. Some of the movements were Chinese Christians. These are all different facts, and the Board is making an individualized determination on each and every case. So can you help me with a framework? I know our cases say that continuation is merely cumulative, and that doesn't suffice. Intensification, deterioration does suffice. But I don't know how to distinguish all of those. Can you help me with that? And I think that that's why the Board here, and in these cases, looks at the evidence in each individual case. And you're correct. This continuation of circumstances is what's not sufficient to establish a change. And just referring to... So if there's a, just to use an extreme, if there's a bombing, there's been a bombing in two different cities at two different times before the original hearing, and then each year after that, for 10 years, there's a bombing in another city, in one sense that's just a continuation, but it seems like it's not just a matter of degree, but it's actually a changed circumstance, in the sense that you had 200 years of no bombings, and then two years of one bombing each, but now you've got whatever the number I threw out was, several more. I'm still not quite understanding how I'm supposed to think about this. And, Your Honor, I think the Board would be within its discretion in that situation to say that is not a change. That is not necessarily an intensification. It's grave conditions which remain grave, and I think you may be... Why is that within the Board's discretion? Because I think it falls within the parameters of the case law about the continuation. So you just attach labels, continuation, cumulativeness, intensification, deterioration, but then it really doesn't matter which one the facts fall into. It does matter, because if there is this intensification or deterioration, but here we're talking about over the course of 20 years, and in the underlying proceedings and repeatedly throughout, there was evidence of a church bombing, and then with this most recent motion to reopen, there was evidence of one church bombing, and there's no showing that this is an intensification of conditions for petitioners and their particularized circumstances. Except when the Board is looking at whether something is new or changed, it tells us it's only looking at it as compared to the second reopening. Except here we have... So we don't have the Board's opinion on what do you think of this as compared to the conditions that existed at the time the petition was resolved? We do have the Board's position, though, on whether this evidence was cumulative, because the Board... Cumulative of what as compared to what? Compared to the conditions that have been in the record. So there's evidence at page AR886-887, 891-892 of church bombings. This evidence is in the record. It is cumulative. And I would just say that this is the type of case that the Supreme Court warned against in a voodoo of repackaging these same claims in creative ways to argue the same facts over and over, which is why motions to reopen are disfavored in immigration proceedings. If there are no further questions. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, if Counsel for the petitioner would please reintroduce himself on the record. He has a two-minute rebuttal. Good morning again, Your Honors. I know I ran over my time the first time, so I'll keep it brief. But I guess I would just add, as I was looking through some things, on the 2023 BIA decision that we're asking you to judicially notice, it does talk about a 2021 bombing, which does post-date the 2020 motion to reopen. And, again, in our list of exhibits, that's in appendix page 40, if you look at G, we do include the 2021 U.S. Commission on International Religious Freedom Findings, Indonesia. That also post-dates the 2020. But I would go back to my original position, which I think has been discussed, that I believe in any motion to reopen, the rule, the pretty ironclad rule, is you look at the original hearing, which in this case was 2009, and compare it with the motion to reopen. Right. But the government seems to agree with you on that. But their response is that the board in the alternative told us that even as compared to the proper comparator, this is just cumulative. That's how they're reading the board decision. I don't think there's a case out there, Judge, where you have a five-year period from 2018 to 2023, where you have 16 BIA decisions saying there have been changed country conditions. So in the Third Circuit case we cited, Liem, there were eight unpublished board decisions finding changed country conditions. And the Third Circuit said they sent it back to the BIA, and they said you really got to consider your own eight decisions. Now we have 16 decisions. So that's really all we're asking, that the BIA look at its own 16 decisions. And the last thing that I'll leave, Judge, is on page 11 of our brief. We do quote several cases, two from the Fourth Circuit, one from, I believe, the Sixth. And that says when you're looking at a single-member BIA decision, you look at consistency with earlier and later pronouncements. And I would suggest there are 16 pronouncements that have been made, and those were not considered. And so I would ask the Court to look at page 11. I'm sure you have, but page 11 of our brief. And I appreciate your time. I really do. Thank you very much. Thank you, counsel. That concludes argument in this case.